Good morning, your honors. May it please the court. Today, the court is being asked whether someone can constitutionally be prosecuted for reasonably expecting to cause substantial emotional distress to someone without having directly contacted that person or threatened them directly with violence. This prosecution presents numerous constitutional problems involving the First Amendment and the Due Process Clause of the Fifth Amendment. This is the first time these issues have been raised since the United States Supreme Court's case in Counterman v. Colorado, and the first time this court has addressed this issue since Conlon, United States v. Conlon. This case is unique among internet stalking prosecutions under 2261A, because unlike the vast majority of those prosecutions, this prosecution involves no direct contact between the alleged perpetrator and his alleged victim. Well, he had direct contact with respect to how the images arose. That's true, your honor. So, the posting of the pictures was posted to public websites. They were not directly communicated to her. They were posted anonymously, and they were only revealed that they were publicly posted through her investigation. So, they had direct contact during their relationship in 2002. But after that... Well, after his initial posting and she told him no, and then she got an injunction, then he still posted again, and he kept doing that, and then there's other evidence in there. Her initials were there. It became self-identifiable. There were people who, you know, knew. He said stewardess, yada, yada, yada. So, I mean, it just don't seem to me it was quite as anonymous. I get your argument, but it don't seem like to me it was as anonymous as you make it seem. So, there are two prosecutions at issue here. There's the first prosecution, which alleged a nine-year course of conduct, and then there's the second prosecution, which led to a four-month course of conduct. The nine-year course of conduct is significantly different than the four-month course of conduct. The nine-year course of conduct from 2006 to 2015, and it was nine-plus years, involved, as the court says, a variety of violations of civil injunctions. So, he did get, there were three civil injunctions against him. There were two civil settlements, and then finally his prosecution criminally. But the second prosecution is what we're alleging violates the First Amendment, because that second prosecution involved no direct contact. It involved no indication that he was ever made aware that she was aware that he was posting this material. And so, he was posting it anonymously, and in fact, the material that is being objected to was already in the Internet, it was in cyberspace. Other people were posting this material, and when the FBI did their investigation, they discovered that other people, other Reddit handles that did not go back to Mr. Uhlenbrock, were also publishing this material. So, he was publishing it anonymously for a four-month period, and then without directly contacting her, without indicating that he had any kind of ill will toward her, any kind of threat toward her, he was then, after the four-month period, arrested. Why wasn't this defamation? So, Your Honor, I think the question is whether or not, so under counterman, they look at all of the exceptions to the First Amendment, and they look at obscenity and defamation, and here, what they're doing, in this statute, by prosecuting it solely under the reasonable expectation of substantial emotional distress, is they're lowering the censure requirement beneath what counterman requires. And so, counterman looks at... The question was, why isn't it defamation? So, I think the issue is whether or not it deserves First Amendment protection. Well, defamation doesn't deserve First Amendment protection. It doesn't mean that it can be criminalized appropriately under the First Amendment. Why not? Because... Defamation? Really? I thought that was a historical exception to the First Amendment. So, there still needs to be some sort of indication that the person who's writing it... So these were fictions. They were fictions... Purporting to be in her own words, right? Yes, purporting to be in her own words, purporting to be in her own words, and not... So what he did was he took some effort to disguise who he was talking about. The person that was the alleged victim of this defamatory statement... This was from behavior that was 20 years ago. It was from behavior that... It was identified as somebody who no longer went by that name. It was difficult. She no longer lived in the city that he was talking about. These were essentially fantasies from a person, about a person that really is... But one of the identifiers, he had flight stewardess in there. And there are hundreds of thousands of stewardesses. Well, in his statement, you know, he acknowledges he did it. He says he's addicted. He gets his thrills doing the postings. And that was all in the first prosecution. Well, so I get that, but we're still talking about what his mindset is and what he knew and so on and so forth. I mean, you're like, you know, you erase all of that and you just move forward and just start with a blank slate. Like he's posting about... He never claims he posted about somebody different. He never claimed any statement. I read that his postings weren't about this person. He never says, oh, I posted about 10 people. How do we know it's her? He never backs away from the fact that the postings were about her. Isn't that right? So in the second case, the reason it was tied to her was because the FBI did an investigation and they tied the IP addresses from Mr. Uhlenbrock's computers to the postings that were being made. But he didn't make any statements. Okay, when they searched his computer, he had a sack full of the images on his computers, et cetera. He consented to all of that. He never said, no, that's not her. Yeah, yeah, yeah. But that's not... Again, he had the Fifth Amendment right to remain silent. And then additionally, that was also during the first prosecution. The only thing I'm trying to follow is your train of thought that this is all in the sphere of anonymity, you know, that who the person is and all that. It's just, you know, out there in cyberspace and so forth. In other words, your argument to sort of de-link the images from her back to the question of why isn't it defamation. I mean, your argument seems to want to just de-link it all. It can't be defamation because there's no showing that it's, quote, this person. So the reason that it isn't defamatory is because, and again, there's a difference between just as true threats don't typically receive First Amendment protection and obscenity doesn't typically receive First Amendment protection. Still, what Counterman says is that you have to have some sort of censure here. And so the censure that the court gave, which was substantial or reasonably expected to cause substantial emotional distress, because that is below the censure requirement that was articulated in Counterman, because it's below, it's a First Amendment violation. And so that's the essential problem. You still have to, for instance, according to Counterman, you still have to provide some sort of mental state. That mental state, this mental state that they're prosecuting him under is closer to negligence than it is to recklessness. And recklessness was the lowest that the court said was appropriate to prosecute. So the problem is, and it's a problem that is shot through this case, is that because they decided to pursue a prosecution just based on reasonable expectation of substantial emotional distress, that's a First Amendment violation. So if they wanted to pursue it and say, look, okay, you can't assert the First Amendment because you've defamed somebody. Okay, well, you have to provide some sort of censure on that. And they didn't, the censure that they provided, reasonable expectation of substantial emotional distress, is insufficient. Your view, Counterman was a threats case. It was a threats case. So your view is that that, what they said about threats, applies to this prosecution. And they go through. Regardless of the theory about why it doesn't run afoul of the First Amendment. That's a threats case. This might be a defamation case. So you're saying that this censure idea applies here as well. This is a stalking case. This is an internet stalking case, is what it is. It's not a defamation case. I mean, it's, they didn't prosecute him for defamation. And because they chose to prosecute him for stalking, using the wrong, the constitutionally invalid censure requirement, it's a First Amendment violation. And so they didn't, and in that, in that stalking, defamation is not an element. It just isn't. So they have to go, they're stuck with the elements that they've chosen. And traditionally what they've done, what the United States Justice Department has done, is they require direct contact and they require a threat. They require the threat to kill or harass or intimidate. They require those things directly. Where does the statute say directly? Whoever with the intent to harass. So the statute doesn't say that. But historically, that has been how the government has pursued these. Maybe that's just because that's easier to prove. And it may be. But, and, and, but that's why prior precedent has always said, well, these things aren't vague. But now, because we are in the reasonable expectation of substantial emotional distress and pursuing a prosecution just based on that. How can you say that something is vague if your client's conduct clearly falls within the parameters of the statute? So, and I'm not sure that it does. So, and I think that, I think that we have a good, strong vagueness as applied in Mr. Nuland Brock's situation. So you have two courses of conduct. One course of conduct is a nine year course of conduct that, where he publishes the material for the first time. He receives these civil injunctions. There are- Photographs? Was that what it was? Photographs? Photographs and stories, yes. And stories, okay. And stories, yes. Photographs and accompanying stories. So that's the nine year course of conduct, okay. And then you have a four month course of conduct where he publishes pictures under somebody's name that they no longer use. Same pictures? Same pictures. There's some testimony that some of them were new, but there were pictures that were taken back in 2002 when they were in a relationship, whatever that was. When was the video published? That was when they were in a relationship, prior to 2006. So the very quick summary of the relationship was, they were in a relationship. He took some photographs surreptitiously. She took photographs consensually. And then he began to publish them. When she noticed the surreptitious recording, she broke up with him. And from then, but from 2006, he hasn't taken any other pictures. Okay. And different stories? Second time around? The stories are different, yes. Stories are different? Yeah, but you know- And pictures? The stories are of the same vein, I would say. But I don't know if that's- Still purporting to be in the first person from the person in the photos and the videos. Yes. Yeah. But again, to criminally prosecute him under this lower mens rea is not permitted by the First Amendment. It's our position. Does the court have other further questions? You've saved time for rebuttal. Yes, I have. Thank you, Your Honor. All right, I'm going to let you pronounce your last name because I'm sure it'll mess it up. Thank you, Your Honor. May it please the court, Elizabeth Berenger for the United States. And we're just talking about the First Amendment issue today. So the First Amendment does not protect the defendant's conduct in this case, and it has applied challenge. As we all know, in 2015, the defendant was convicted of the very same offense for very similar conduct. And at that time, he admitted that he engaged in the course of conduct with the intent to harass and intimidate the victim. And that his course of conduct caused serious emotional distress. Once he was released from prison, he's on supervised release with these conditions that prohibit him from engaging this very behavior. And he once again posts photos, sexually explicit photos of a private person on the Internet against her wishes. Along with her identifying details and impersonates her. He pretends to be her and says she wants to engage in sexual activity with strangers on her work trips. So taking all of these together, the sexually explicit photos, the personal identifying information, and the impersonation, putting all those together, this is not protected activity under the First Amendment. All of the circuits have found similar activity is not protected as either speech integral to criminal conduct, as defamation, and in one case, as obscenity. So when we put there, I did want to address some things that came up, either in the brief or that defense counsel said that this statute is prohibiting just speech. And as we know, as all the circuits have held, 2261A prohibits a course of conduct. And a lot of times, that course of conduct involves some communication, but it also involves non-speech elements. As in this case, we have a bunch of non-speech. We have going on Reddit. We have impersonating the victim. We have this persistent disturbing and tormenting of the victim online. I counted, when I went through the exhibits one through five, and 16 through 18 and 19, about 15 different postings, including the ones that had been deleted. So this persistent posting with different usernames, that's not speech, that's conduct. And so when we take it all together, we have a mixture of speech. The speech is being used to effectuate the crime of intimidation and harassment of 2261A. And just to cite that persistent posting is consistent with what Gormley found in the Second Circuit, and this court has approved of Gormley. So I also wanted to address the counterman issue. As Judge Duncan pointed out, that was a true threats case, a different category that we're alleging. The government has never alleged that this is a true threats case, even though there are elements of threats that cause fear. I direct the court's attention to page 411, where the victim testified that as a result of him posting online and putting her public information and where she worked on there, she felt very fearful. She disguised her appearance. She was scared to go out in public. She was scared for her grandkids. She was scared that somebody would come to her home or her workplace and hurt her. So there are elements of whatever is being prohibited in true threats, but it definitely fits more neatly into the speech integral to criminal conduct exception, obscenity, and defamation. But as far as countermen, countermen isn't addressing this situation. The point in countermen is that true threats, if we are governing a statute without a subjective mental state, there's a chilling of speech. But here we have a subjective mental state. We have a specific intent element. You have to have a specific intent to kill, injure, harass, intimidate. So that gives the subjective mental state that's required under countermen. If countermen- The injunctions that she obtained directed at her having felt threatened by this conduct? The only evidence that we have of the content of those injunctions other than her testimony, they are in his plea agreement where they mentioned them. And all they said is there were permanent injunctions prohibiting him from putting them online anymore. There was an original one in 2009, and then it was reaffirmed in a later case. I believe it was in 2011. Okay, I thought I had read in the early one that part of when she went to court to get the injunction was because of her fear, feeling threatened or something. But I may have it mixed up. I thought the earlier time when she went to court was because she was saying that she was feeling threatened and people would identify her. And I guess she was still, he was a pilot on the aircraft. She was a stewardess, at least that's what they called him then, flight attendant. And she was feeling threatened because of the possibility of people recognizing her or something to that effect. Yes, I mean, that may have been in other portions of the record, but it is most definitely on the record at page 411 in her direct testimony. So, I also wanted to address the defendant's suggestion that this is a unique case, and I would direct the court's attention to the Third Circuit's decision in United States-Gonzalez. There were multiple defendants in that case, but an important defendant to pay attention to is Amy Gonzalez, the lead defendant. And she was the sister-in-law of the victim, and she was charged with cyber-stalking under 2261A and her culpable conduct involved. Posting online that the victim was sexually abusing her children and sending letters to third parties saying that, and maybe the defendant's children, it was a little unclear for the record that the victim was sexually abusing her children. So, there was no threat of violence in that case. It was just a person who set out to go online and spread lies to ruin someone's life. It's just like this case, that we have somebody. It doesn't always have to involve a threat of violence. We know from our Supreme Court case law and Fifth Circuit case law, there are many different kinds of situations where someone can be harassing and tormenting and persistently disturbing criminal harassment in a context that does not involve a threat of violence. It's harassing litigation, harassing debt collection. We have a perfect case from the Fifth Circuit Test Master's Educational Services, where someone just keeps repeatedly calling a company, using obscenity, threatening litigation. So, harassment is broader than under the unprotected category and more than just threats of violence. Let me take you to two other categories. He did argue in the opening because Prince was about the statute, but in the briefing there are a lot of issues raised. Number one, take me through his challenge to the 404B evidence and whether there's any problem with that and why. And then secondly, the judge didn't use the pattern charge, which we always say if you use the pattern charge, it's hard to get in trouble. But anyway, I don't think the pattern charge as such was there, but I believe that's kind of an issue that was raised on the pattern. So, can you just give the backdrop on the two issues, the 404B and the jury charge? Sure, let me address the jury instruction issue first. The court did attempt to use the pattern instruction. There was an objection from the defendant that the intent element wasn't defined enough. And so the court, as affixed to that, put the purposely element in it to make it more clear of the specific intent element. So, yes, maybe it was a little invited error at some point, if to the extent it changed a little bit. I mean, I'm not saying it was error, but if it was invited by the defense, that modification to the pattern instruction. The pattern instruction accurately charged the law, and the defendant was able to do everything he needed to do with his defense with the instruction that was given. There was no dispute below that the defendant had posted the photos. Defense counsel, in both his opening and his closing argument, conceded that the defendant had posted the photos, but that he did it without intent. So he was able to argue that, based on the jury instruction, that he lacked the intent. It was just tough for him, in light of his previous admission in 2015, that he had done very similar behavior with the intent to intimidate and harass the victim. And in light of evidence that she had asked him for nearly 20 years to stop posting the photos. So the jury heard all of that evidence. And as far as the 404B evidence, it seems like a textbook situation where a prior incident that's very closely linked is used for the purpose of proving mental state only. I think the record is replete with cautionary instructions, an overwhelming abundance. The judge was so careful that every time the prior act evidence came in, the court instructed the jury on the proper use of that evidence. It is always prejudicial when we use prior acts evidence, but the court did what it could to mitigate that prejudice, and of course, it's highly probative. So it's hard to say that the prejudice substantially outweighed the benefits of the testimony when we're proving specific intent. Specific intent is the heart of the case. Proving an intent to intimidate and harass can be very difficult, especially in light of the considerations in this case that we have. Someone on supervised release who's prevented from directly or indirectly contacting the victim, but he's continuing to harass her with those photos. So the evidence that he had admitted in the past to doing very similar behavior with that intent was highly probative. Maybe just to address if the court has any further questions about defamation, I would point this court to the decision in Gonzales that had a very similar fact pattern, where they found these impersonating the victim with a false claim that she wanted to engage in sex with strangers is very much on par with that case. It qualifies as a false statement about a private citizen, about private sexual matters. It would be, in the government's position, a per se defamation supported by the record. And because this is an- So what was the specific false statement here? The specific false statement is that he pretended to be her. He was saying, writing stories in her name as if he were her, saying that she loved to engage in sexual conduct with strangers on her work trip. So she's a flight attendant and on her layover. So it's almost putting her in a false light. So if there are no further questions, I would cede the rest of my time and ask the court to affirm the judgment. Thank you, Ms. Berenger. Mr. Locke for rebuttal. So, your honor, in Gonzales, if we take a look at that case, that case is significantly different than Mr. Uhlenbrock's situation. The reason that it's different is because in Gonzales, there was a communication to the people, to the alleged victims, and to their community. These things were mailed directly to them so that they were saying, look, this is what this person is doing. Here, again, Mr. Uhlenbrock, his intention was not that she would ever find them. In the four month course of conduct that the government is alleging in this second prosecution, nobody ever let him know, look, she's discovering this stuff. So the only way he found that out was when he got arrested. And he was on supervised release. There were other means that were less problematic, less problematic to our First Amendment rights, that the government could have pursued. You know whether his posting of the pictures the second time around violated any injunctions that he was under? I heard mention about injunctions. I think that we can assume that it did. I think that we can also say that it violated his supervised release, for sure. Okay, so had they wanted to make sure that he knew that this was causing her substantial emotional distress, they could have reported it to his supervised release officer. And the timeline here is fascinating for the court. Okay, so in June, she discovers these pictures. She contacts the FBI agent by writing a letter. The FBI agent keeps it on his desk for three months. He doesn't contact Reddit. All of this stuff is against Reddit's content policy. Non-consensual pornography is against their policy, and they can take it down, and they do take it down. And they take down these communities. They take down these sub-Reddits when they're publishing non-consensual pornography. But he doesn't contact them. He lets the behavior continue. He doesn't even contact the supervised release officer to say, hey, Mr. Uhlenbrock, can you just make sure that he's not getting on the Internet? He doesn't do any of those things. He could have done all of those things. And if Mr. Uhlenbrock had continued, for instance, had he received a jail sanction for his supervised release violation and then continued after that, then the government could certainly prove knowingly causing substantial emotional distress by what he was posting. But as far as he knew, when he got arrested in September of 2020, she hadn't discovered these postings. He didn't know that he was causing her substantial emotional distress because, and I can see Judge Stewart. How did she find out the first time around about the postings? She was notified by a friend. The first time? Yes. Yes. And she was notified by a friend, and then she realized that, and then the pattern was that she would. Is that what happened the second time around? It is also what happened the second time around. But we never received any documentation of that. And so, but certainly what could have happened to make sure that we weren't under this substantial, under this negligence, essentially negligence mens rea, is they could have said, listen, you are causing this substantial emotional distress. Report it to a supervised release officer. And then had he continued under those circumstances, that would certainly be a violation of the statute. They didn't do that. And in fact, I think that the behavior, allowing it to continue for three months so that they can pursue a criminal prosecution, I think that's, frankly, I think that's disturbing. Come on, counsel. Yes, your honor. The FBI didn't move for three months, yet we have a pattern of conduct that goes on for years. And the bad part of it is the slowness of the FBI to move. So the bad part of it is this. They could have contacted Reddit if it was causing such emotional distress. Can I get your argument? The central argument is that whatever the conduct is, number one, the government charged them under the wrong statute, that's number one. And then number two, the passage of time vitiated much of what otherwise might have been probative. I had to sum up, that's the argument, isn't it? Yes, mostly. And also, there are ways for the marketplace to take care of these things. You don't have to pursue a criminal prosecution. You can, and there were ways available to the alleged victim and to the FBI. Went to the FBI. She went to the FBI. Most citizens don't do that. She went to the FBI. She sat there. She pours her heart out. She says all this bad stuff. She sues him. She gets a judgment. He pays the judgment. He, for $50,000, he reduced it to 43 so he could pay it right away. She took the 43,000. He had the injunction. He said I'm not doing it anymore. Then he continues to do it. He went to jail. He violated the order. He was on supervised release. Continued the post. She has two psychiatrists, therapists, etc. He says I'm addicted. It's not my fault. It's not criminal. So, trying to keep an open mind, Mr. Sprague. I do appreciate that. It's just hard for me to get there that the center is not there. I'm trying to keep an open mind. That's what I get paid to do. But, I mean, just, I get it. Your skills, I'm going to give you your props. Your skill. It's just hard for me to get removed. But, anyway, just, but, I mean, your job is to convince me to get me off my dime. So, that's why I'm letting you know where my head is. So, if it was causing substantial emotional distress, there's an ability to report posts to Reddit. And then they will take those posts down. She didn't do that. She went to the FBI. The slowest possible thing you could do. But you faulted the victim because she didn't go to Reddit. She went to the FBI.  Well, so, but additionally, the only way this was discovered was through her investigation. So, it wasn't that it was revealed, it wasn't that it was revealed by him, as these cases mostly do, where they contact them themselves and say, listen, you know, this is what I'm going to do if you don't do X, Y, and Z. All right. Judge Smith has been lenient with me and I've kept you. I appreciate it. Over your time and I appreciate his indulgence to my. Thank you very much, Your Honors. Thank you. Your case is under submission.